IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SABRINA L. MCKINNEY, | ) | |
| Acting Chapter 13 Trustee for the | ) | |
| Middle District of Alabama, | ) | |
| | ) | |
| Trustee-Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:16-CV-522-WKW |
| | ) | [WO] |
| BARBARA JEAN RUSSELL, | ) | |
| | ) | |
| Debtor-Appellee. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

At root, this case is a dispute over whether a Chapter 13 plan should be modified to capture the proceeds of a post-confirmation windfall.  Debtor-Appellee Barbara Jean Russell ("the Debtor") filed a petition for Chapter 13 bankruptcy on January 18, 2013 (Doc. # 3-2)[1]; her plan was confirmed on April 29 of that year in Bankruptcy Court Chapter 13 Case No. 13-30160-DHW-13 (Doc. # 3-4).  After Ms. Russell received a settlement for injuries she suffered in a 2015 car accident, Trustee-Appellant Sabrina L. McKinney ("the Trustee") moved to modify the Debtor's plan so as to collect the net proceeds of the settlement for the benefit of the

---

[1] All references in this opinion to page numbers are to those pages assigned by CM/ECF in the instant proceeding as opposed to page numbers generated by the parties or by CM/ECF in the Bankruptcy Court.

Debtor's unsecured creditors.  (Doc. # 3-8.)  The United States Bankruptcy Court for the Middle District of Alabama denied the Trustee's motion to modify (Doc. # 3-14), as well as the Trustee's later motion to reconsider the denial (Doc. # 3-23).  The Trustee appeals the denial of these two motions (collectively, the "Order"[2]).  For the reasons that follow, the Bankruptcy Court's decision will be reversed and the action will be remanded to the Bankruptcy Court.

## I. JURISDICTION AND VENUE

The court has jurisdiction to hear appeals from final orders of the Bankruptcy Court.  28 U.S.C. § 158(a)(1).  Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."  *Id.*  However, the Debtor contests jurisdiction, claiming that the Order was interlocutory in nature and therefore outside the ambit of § 158(a)(1).  *See id.*; (Doc. # 9 at 10–12, 18.)

In the bankruptcy context, the concept of finality takes on a different hue than in other civil litigation.  "A bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor."  *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692

---

[2] Although the Bankruptcy Court issued two orders (Docs. # 3-14, 3-23), only in the memorandum opinion supporting its denial of the Trustee's motion to reconsider did it give reasons for its decision (*see* Doc. # 3-22).  The court assumes that these orders, which shared a common effect, also shared the rationale reflected in the memorandum opinion.  Thus, to avoid confusion, the court refers to the orders collectively.

(2015) (citation and internal quotation marks omitted).  Thus, an order need not resolve the entirety of the bankruptcy case to be final.  *Id.*  Rather, where an order effects a "final[ ] dispos[ition] of discrete disputes within the larger case," it may be appealed immediately.  *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (emphasis omitted).  The bankruptcy appeals statute codifies this approach insofar as it provides broadly for district-court jurisdiction "to hear appeals . . . from final judgments, *orders*, *and decrees*." § 158(a)(1) (emphasis added); *see Bullard*, 135 S. Ct. at 1692.

The denial of a bankruptcy trustee's motion to modify a Chapter 13 plan is the sort of "final order" that may be appealed as of right under § 158(a)(1). *Germeraad v. Powers*, 826 F.3d 962, 967 (7th Cir. 2016).  In *Germeraad*, the Seventh Circuit reasoned that such a denial does not form "part of a larger 'proceeding' that will conclude only when some event other than the denial of the motion occurs.  Rather, the denial of the motion will generally resolve a discrete dispute within the larger bankruptcy case, i.e., whether the debtor's plan may be modified for the reasons the trustee cites." *Id.* at 966.  Barring a curable "technical defect" in the motion, "the bankruptcy court will not invite the trustee to bring a subsequent motion seeking plan modification on the same grounds." *Id.*  And, crucially, denial of the motion for modification "precludes the trustee from filing a subsequent motion based on the same grounds." *Id.* at 967.

This is convincing logic, especially when compared to the interlocutory nature of a bankruptcy court's denial of a motion to confirm a plan in the first instance. *See Bullard*, 135 S. Ct. at 1693–94 (holding that "[d]enial of confirmation with leave to amend" is not a final order). If confirmation is denied, "[t]he parties' rights and obligations remain unsettled." *Id.* at 1693. Not so when the bankruptcy court denies a motion to modify, as the denial leaves intact the debtor's obligations under the extant plan—the debtor does not fall into the state of limbo that results from the denial of a confirmation. And, although the denial of confirmation "does rule out the specific arrangement of relief embodied in a particular plan," there remains the background drumbeat of the march toward "an approved plan that would allow the bankruptcy to move forward." *Id.* Ultimately, the denial is only a step in the process of reaching a binding Chapter 13 plan.

In light of the Seventh Circuit's persuasive reasoning, the court finds that the Order resolved a discrete dispute and is therefore a final order from which the Trustee can appeal as of right. *See Howard Delivery Serv., Inc.*, 547 U.S. at 657 n.3; *Germeraad*, 826 F.3d at 966. By virtue of the Bankruptcy Court's legal conclusion[3]

---

[3] To be sure, the Bankruptcy Court correctly characterized the "determination of cause" as "a question of fact." (Doc. # 3-22 at 4.) But the court's reasoning hinged on a *per se* rule—that an increase of payments to unsecured creditors cannot provide sufficient cause to extend the commitment period—and therefore took the form of a "conclu[sion] as a matter of law that the Bankruptcy Code did not allow the requested modification." *Germeraad*, 826 F.3d at 966; *cf. United States v. Patterson*, 792 F.2d 531, 534 (5th Cir. 1986) (decrying the use of "*per se* arguments" to convert an issue into "a legal rather than a factual question").

that "[i]ncreasing payments to unsecured creditors is not sufficient cause to extend the plan term beyond three years" (Doc. # 3-22 at 4), the Order foreclosed any modification of the plan so as to capture the proceeds of the personal-injury settlement for the benefit of the Debtor's unsecured creditors. *See id.*; *Bullard*, 135 S. Ct. at 1692 (explaining that a confirmation order is final, partially because it "foreclos[es] relitigation of any issue actually litigated by the parties and any issues necessarily determined by the confirmation order") (internal quotation marks and citation omitted). By its nature, the Order did not invite a curative amended motion, and accordingly gave a final resolution to that particular dispute.

The Debtor contends that the denial was not final because the Trustee was free to "propose yet another modified plan." (Doc. # 9 at 12.) But the Debtor failed to identify any basis for such a motion, and, more importantly, her argument implies that "there is some larger 'proceeding' relating to the trustee's motions to modify that does not come to an end until it is legally impossible for the trustee to file any further motions." *Germeraad*, 826 F.3d at 967. This is not the case. Where, as here, the denial of modification "precludes the trustee from filing a subsequent motion based on the same grounds," the denial "resolve[s] a freestanding dispute within the

larger bankruptcy case," and is therefore final. *Id.* Because the Order was final, the court may exercise jurisdiction over this appeal.[4] *See* § 158(a)(1).

## II.  STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and its legal conclusions and any mixed questions of law and fact are reviewed *de novo*. *Educ. Credit Mgmt. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007); *Christopher v. Cox (In re Cox)*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007). "The district court must independently examine the law and draw its own conclusions after applying the law to the facts, and then may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *McLaney v. Ky. Higher Educ. Assistance Auth. (In re McLaney)*, 375 B.R. 666, 672 (M.D. Ala. 2007) (citations and internal quotation marks omitted). A finding of fact "is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).

---

[4] The Debtor's arguments to the contrary are inapposite. Ms. Russell cites cases that purportedly stand for the proposition that the Order "was interlocutory in nature." (Doc. # 9 at 10–11); *see In re McBride*, 203 B.R. 633 (Bankr. S.D. Ohio 1996); *Maiorino v. Branford Sav. Bank*, 691 F.2d 89 (2d Cir. 1982). But both *McBride* and *Maiorino* deal with the denial of confirmation in the first instance. As discussed above, such a denial is only a preliminary step in the larger process of confirming a Chapter 13 plan; such a denial does not bring an end to a discrete proceeding, as does the post-confirmation denial of a modification. *McBride* and *Maiorino* are therefore distinguishable.

## III.  BACKGROUND

On January 18, 2013, Ms. Russell filed for relief under Chapter 13 of the Bankruptcy Code.  (Doc. # 3-2.)  She proposed a 60-month plan, under which she would pay in full her sole secured claim—a debt secured by her 2009 Hyundai Accent—and pay nothing on her unsecured claims.[5]  (Doc. # 3-3.)  The Bankruptcy Court confirmed her plan on April 29, 2013.  (Doc. # 3-4.)  Because the Debtor's income is below the median in Alabama (Doc. # 3-2 at 17), she is subject to a minimum commitment period of three years under 11 U.S.C. § 1325(b)(4). (However, as further discussed below, Ms. Russell elected to undertake a maximum-length Chapter 13 plan so that she could save her car.)

On April 24, 2015, the Debtor was in a car accident and totaled her Hyundai. (Doc. # 3-5.)  She filed a motion on April 29, 2015, to substitute collateral, seeking the Bankruptcy Court's permission to buy a replacement vehicle with her insurance proceeds from the property damage.  (Doc. # 3-5.)  Notably, the Debtor did not disclose that she was pursuing a claim for personal injury or taking any other action as a result of the accident.  On May 11, 2015, the Bankruptcy Court granted the motion to substitute collateral.  (Doc. # 3-6.)  Then, on February 5, 2016—three years and eighteen days after filing the bankruptcy petition, and over nine months

---

[5] The Debtor's unsecured debt totals $62,131.36 (Doc. # 3-2 at 13–14), and the allowed unsecured claims total $23,691.93 (Doc. # 8 at 30).

after the accident—the Debtor filed an application to retain an attorney for purposes of prosecuting her personal-injury action.  (Doc. # 3-7.)  The Bankruptcy Court granted the application on March 1.  (Doc. # 3-12.)  Even before the application was granted, the Debtor reached a settlement in her action and had filed on February 22, 2016 a motion to approve the settlement and an application to approve her attorney's fees.  (Docs. # 3-10, 3-11.)  The Bankruptcy Court granted the motion on March 18 (Doc. # 3-15), and the attorney-fee application on March 28, 2016 (Doc. # 3-16).

While the application to employ Debtor's personal-injury attorney was pending before the Bankruptcy Court, on February 16 the Trustee filed a motion to modify Debtor's Chapter 13 plan to capture the net proceeds from Ms. Russell's cause of action.[6]  (Doc. # 3-8.)  After a hearing, the Bankruptcy Court denied the Trustee's motion on March 14.  (Doc. # 3-14.)  On March 28, the Trustee moved to reconsider (Doc. # 3-17), and the parties briefed the issue (Docs. # 3-19, 3-20, 3-21).  The Bankruptcy Court denied the motion on June 22 (Doc. # 3-23), reasoning that "the [D]ebtor is not required to pay the [settlement] proceeds into the plan because the applicable commitment period ended prior to her receipt of those proceeds"

---

[6] Notably, the Trustee sought only to capture the *net* proceeds of the settlement, not the *gross* proceeds.  (Doc. # 3-8 at 1.)  In other words, the modified plan would leave untouched the proceeds from the cause of action that were applied to the Debtor's medical bills and attorney's fees.  (*See* Doc. # 3-10 at 1 (subtracting medical and legal bills from $31,000 settlement to arrive at a net balance of $12,103.79).)  All this is buried in the technical language of Schedule C exemptions, but bears directly on the question of cause for modification.  (Doc. # 3-8 at 1); *see infra*, Part IV.B.

8

(Doc. # 3-22 at 3).  The Trustee timely filed a notice of appeal on June 27, 2016.
(Doc. # 3-24.)

## IV.  DISCUSSION

Chapter 13 of the Bankruptcy Code offers debtors a financial reset in exchange for their commitment of future disposable income to repay outstanding debts.  *See* 11 U.S.C. § 1301 *et seq.*  The chapter offers advantages to creditors and to debtors alike: creditors receive "ratable recoveries from [the debtor's] future income," and debtors wipe clean their financial slates without having to liquidate existing assets.  8 Collier on Bankruptcy ¶ 1300.02 (A. Resnick & H. Sommer eds., 16th ed. 2016).  The vehicle for this fresh start is the Chapter 13 plan, which sets out the debtor's proposed payments to her creditors.  *See* 11 U.S.C. §§ 1321, 1322.  The bankruptcy court will confirm the plan if it meets certain criteria, *id.* § 1325, and, on the completion of plan payments, the debtor will enjoy a discharge of her eligible debts, *id.* § 1328.  Should the debtor's financial situation change for better or worse, the plan may be modified by the debtor herself, the trustee, or a holder of an unsecured claim.  *Id.* § 1329.

The Bankruptcy Code requires the debtor to disclose to the bankruptcy court a schedule of assets, liabilities, income, and expenditures.  *Id.* § 521(a)(1).  This disclosure requirement allows creditors to recover to the maximum extent possible, and helps guard against gamesmanship by the debtor.  *See Burnes v. Pemco*

*Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system.") (citation and internal quotation marks omitted). The Eleventh Circuit has made clear that "[t]he duty to disclose is a continuing one" that requires the debtor to "amend his financial statements if circumstances change." *Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (citing *Burnes*, 291 F.3d at 1296). Such an ongoing disclosure requirement is necessary in light of the modification provisions of the Code: "If postconfirmation assets were not subject to disclosure, modifications for increased payments would be rare because few debtors would voluntarily disclose new assets, and the trustee and creditors would be unlikely to obtain this information from sources other than the debtor." *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1245 (11th Cir. 2008). This ongoing disclosure requirement gives teeth to the statutory power of the Trustee and unsecured creditors to seek modification.

Unique to Chapter 13 bankruptcy—and, as will be seen, key to the analysis in this appeal—is the concept of the "commitment period." *See* 11 U.S.C. § 1325. If the trustee or an unsecured creditor objects to the proposed plan, the bankruptcy court cannot confirm the plan unless it provides for either (1) repayment in full of the unsecured claim, or (2) commitment of "all of the debtor's projected disposable income," for a set period of time, toward payment of unsecured claims. *Id.*

§ 1325(b)(1).  This set period of time is known as the "applicable commitment period," and its length depends on the financial means of the debtor.  *See id.* § 1325(b)(4).  For debtors like Ms. Russell with an income below the median in their state, the commitment period is three years; for debtors with an above-median income, the commitment period is five years.  *Id.*  In no case may a commitment period exceed five years, but the bankruptcy court, for cause, may approve a commitment period for a below-median debtor that lasts up to five years.  *Id.* § 1322(d)(2).  The commitment period also comes into play in the modification context.  *See id.* § 1329(c).  Unless approved by the court for cause, a modified plan cannot last longer than three or five years—whichever the applicable commitment period may be—after the due date of the first payment under the original plan.  *Id.* And, as with the confirmation of a plan in the first instance, the court may not approve a modified plan that requires payments to be made more than five years after the first payment came due.  *Id.*

The Trustee appeals from the Order's denial of his motion to modify.  The analysis of the appeal is divided into two sections.  First, did the personal-injury cause of action form part of the bankruptcy estate?  And second, if so, did the bankruptcy court clearly err in finding that there was no cause to extend the commitment period?

**A.      The personal-injury cause of action formed part of the bankruptcy estate.**

Answering the property-of-the-estate question would require analysis of the interplay between § 1306(a)'s definition of "property of the estate" and § 1327(b)'s provision for returning that property to the debtor.  But the Eleventh Circuit, in *In re Waldron*, spared the court such a burden.[7]  *See* 536 F.3d at 1239.  As a brief discussion of the case illustrates, *Waldron* effectively decides this question.

The subject of the Chapter 13 dispute in *Waldron*, as in this case, was a settlement following a car accident.  536 F.3d at 1241.  After receiving the bankruptcy court's approval for a $25,000 settlement against another driver, Mr. Waldron sought approval to settle his claims against two insurers for underinsured-motorist benefits.  *Id.*  Mr. Waldron asserted that proceeds of the insurance settlements would not be property of the bankruptcy estate.  *Id.*  Instead, because § 1327(b) "vests all of the property of the estate in the debtor" on confirmation of the Chapter 13 plan, he argued that the underinsured-motorist claims were not necessary to the plan and accordingly never became part of the bankruptcy estate. *Id.* at 1242.  The Eleventh Circuit disagreed, holding that § 1327(b) "does not . . . automatically vest in the debtor assets acquired after confirmation."  *Id.*  Rather, the court looked to the definition of "property of the estate" in § 1306(a), reasoning that

---

[7] Indeed, *Waldron*'s ruling applies so squarely to this case as to call into question the Debtor's good faith in challenging its applicability.  *See* Fed. R. Civ. P. 11(b).

the post-confirmation acquisition of the cause of action did not exclude it from the statute's reach. *Id.* As the court explained, "[s]ection 1306(a) does not mention the confirmation of the debtor's plan as an event relevant to what assets are property of the estate . . . . [P]roperty acquired later vests in the estate, under section 1306(a), until the case ends or is converted." *Id.* at 1242–43. In other words, so long as the Chapter 13 bankruptcy has not been closed, dismissed, or converted to a Chapter 7 proceeding, a debtor's cause of action is property of the estate whether it arises before or after confirmation of the plan. Thus, because Ms. Russell acquired her personal-injury cause of action during her Chapter 13 bankruptcy, the action and resulting settlement are property of the estate under *Waldron*.

Faced with the definitive precedent set by *Waldron*, the Debtor tries to sidestep the issue and claim that *Waldron* does not apply to her case. The Debtor tries to do this with two equally improbable lines of reasoning. First, she points to a statement in *Waldron* that she characterizes as "pivotal," (Doc. # 9 at 21): "New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to [the debtor]," 536 F.3d at 1342. This statement, the Debtor claims, does not apply under these facts. (Doc. # 9 at 21.) But the court fails to see—and the Debtor failed to elucidate—why it might matter that the "pivotal statement in the opinion would not apply." (Doc. # 9 at 21.) It is not the court's job to "distill every potential argument that could be made," and

accordingly the Debtor's attempt to distinguish *Waldron* fails.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995).

Second, the Debtor argues that it is mathematically impossible for a modification to meet the requirements of the Bankruptcy Code if proposed more than two years after commencement of the plan.  (Doc. # 9 at 23–27.)  As she reads the Bankruptcy Code, the commitment period resets with every proposed modification; a below-median debtor who seeks modification after completing one year of a three-year plan would therefore have to undertake an additional post-modification commitment period of three years.  Accordingly, if modification is proposed more than two years into the plan, the three-year extension of the commitment period would lead to a total commitment period exceeding the statutory maximum of five years.  As a result, she posits, *Waldron* does not apply here.  But Ms. Russell reasons from a flawed premise:  She wrongly assumes that the commitment period resets with every proposed modification.  Not only does this assumption lack a textual basis in the Bankruptcy Code, it would effectively preclude plan modification in above-median income cases, rendering superfluous a large chunk of the statutory text.  *See* 11 U.S.C. § 1329(c) (applying five-year commitment period to above-median debtors); 11 U.S.C. § 1322(d)(2) (requiring that no Chapter 13 plan exceed five years); *cf. also Clark v. Rameker*, 134 S. Ct. 2242, 2249 ("[A] statute should be construed so that effect is given to all its

provisions, so that no part will be inoperative or superfluous.") (citation omitted). The claimed mathematical impossibility of modification does not persuade, and accordingly *Waldron* applies. The personal-injury cause of action was property of the bankruptcy estate despite arising after confirmation.

**B.    The Bankruptcy Court clearly erred in finding that no cause existed for the modification.**

The Bankruptcy Court reasoned that the Debtor's plan could only be modified to capture the settlement proceeds if the Debtor were subject to a five-year commitment period. (Doc. # 3-22 at 3.) Eyeing the Debtor's below-median income, the Bankruptcy Court determined that such a commitment period could not be imposed absent a showing of cause, which the Trustee had not established. (Doc. # 3-22 at 3–4.) On appeal, the Trustee argues that cause need not have been shown to allow the modification, and alternatively that "ample cause" existed to support modification. (Docs. # 10 at 18, 14–27; 8 at 20.) The Debtor echoes the Bankruptcy Court's conclusion that cause must be, and was not, shown. (Doc. # 9 at 27–29.)

As a threshold matter, the Bankruptcy Court correctly held that granting the proposed modification would require a showing of cause. Under § 1329(c), a modified plan may only provide for payments within the time frame of the applicable commitment period; a below-median debtor's modified plan, therefore, may only require payments until the three-year anniversary of the debtor's first payment under the original plan. But this three-year limitation is subject to an exception: for cause,

15

the court may approve a modification to a below-median debtor's plan that calls for payments until the fifth anniversary of the first payment.[8]   11 U.S.C. § 1329(c). Accordingly, because the modified plan proposed by the Trustee would require the Debtor to make payments for a period expiring five years after her initial payment, the plan could not be approved by the Bankruptcy Court absent a showing of cause.

The Trustee takes issue with this proposition, arguing instead that the original plan's five-year duration obviates the need for a showing of cause to approve a modified plan of the same length.  (Doc. # 10 at 16–18.)  This is seductive logic: after all, if the court already found cause to confirm the original five-year plan, why should it have to find cause again for a modification of the same duration?  But the Bankruptcy Code does not work that way.  Rather, § 1329(c) predicates approval of a modified plan on a showing of cause if that plan "provide[s] for payments over a period that expires after the applicable commitment period . . . after the time that the first payment under the original confirmed plan was due."  And the applicable commitment period is a creature of statute, not of the law of the case; even after committing to a five-year plan, the applicable commitment period for Ms. Russell is three years.  *Accord In re Pasley*, 507 B.R. 312, 319 (Bankr. E.D. Cal. 2014)

---

[8] Although the text of § 1329(c) does not explicitly limit extensions of modified plans to below-median income debtors, the Code imposes a five-year cap on all modified plans— effectively precluding approval of a longer period for above-median debtors, which are already subject to a five-year commitment period.  *See* 11 U.S.C. § 1329(c).

(explaining that a below-median debtor remains subject to a statutory minimum commitment period of three years, even if her confirmed plan provides for payments over five years).  Section 1329(c) requires cause to be shown where the modified plan is longer than the applicable commitment period, not where the modified plan is longer than the original plan.   Therefore, the Bankruptcy Court properly conditioned the approval of the Trustee's proposed modification on a showing of cause.

But the Bankruptcy Court stumbled in finding that the Trustee failed to show cause.  Cause is not defined in the Bankruptcy Code, *see* 11 U.S.C. §§ 1322(d), 1329(c), and courts have found the legislative use of such a broad, open term indicates that cause "is left to judicial discretion, to be decided on a case-by-case basis."  *In re Poff*, 7 B.R. 15, 17 (Bankr. S.D. Ohio 1980); *accord In re Frank*, 69 B.R. 129, 133 (Bankr. C.D. Ill. 1986); *In re Greer*, 60 B.R. 547, 555 (Bankr. C.D. Cal. 1985); *cf. also Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012) ("[I]t is normal usage that, in the absence of contrary indication, governs our interpretation of texts.").  The Chapter 13 case law therefore shapes the inquiry into cause.  Moreover, because cause is a question of fact, *see Davis v. Gore*, No. 1:12-CV-2013-WMA, 2014 WL 536980, at *3 (N.D. Ala. Feb. 10, 2014), the court

reviews the Bankruptcy Court's Order for clear error.[9]  *See Mosley*, 494 F.3d at 1324.

Under this "very deferential" standard of review, reversal is only proper where "the

entire evidence" leads to "the definite and firm conviction that a mistake has been

committed."  *Conner v. GDCP Warden*, 784 F.3d 752, 765 (11th Cir. 2015)

(citations omitted).   Because a review of the undisputed record leads to the

conclusion that the denial of modification was a mistake, the Order is due to be

reversed.  *Id.*

The five-year duration of the Debtor's confirmed plan figures prominently in

the court's reasoning.  While this does not render unnecessary a showing of cause,

it does ameliorate concerns expressed in the jurisprudence and commentary that

Chapter 13 debtors should not be forced into plans of extended length.  *See*

*Villanueva*, 274 B.R. at 842 ("[D]ebtors must *voluntarily* choose to extend their plan

beyond three years.") (citation omitted) (emphasis in original); 8 Collier on

Bankruptcy ¶ 1322.18[1][b] (stressing that the extension of a below-median debtor's

plan beyond three years must be "completely voluntary, and not imposed on the

debtor by creditors or the chapter 13 trustee").  Ms. Russell was hardly forced into a

---

[9] The Eleventh Circuit has not spoken on this issue, but the undersigned agrees with the majority view that a determination of cause under § 1329(c) or § 1322(d) is a finding of fact. *E.g.*, *In re Witkowski*, 16 F.3d 739, 747 (7th Cir. 1994); *Davis*, 2014 WL 536980, at *3; *United Cos. Lending Corp. v. Witt (In re Witt)*, 199 B.R. 890, 892 (W.D. Va. 1996).  A minority of courts has held that the cause inquiry is a "mixed question of law and fact." *E.g.*, *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 842 (B.A.P. 9th Cir. 2002).  Even if this were the case, the court would reach the same result because the standard of review would be *de novo*, rather than the more forgiving clear-error standard.  *Mosley*, 494 F.3d at 1324.

five-year plan.  Rather, she voluntarily sought to extend the plan's duration in hopes of saving her car.  That she was able to do so—while, under her confirmed plan, discharging $62,121.36 in unsecured debt without paying a penny towards her unsecured claims (Doc. # 3-2 at 14)—marks a chief benefit of Chapter 13 bankruptcy.  But "[t]he benefits of bankruptcy come with burdens and duties." *In re Rankin*, 546 B.R. 861, 866 (Bankr. D. Mont. 2016).  One such burden is the requirement that the debtor submit her "future earnings" and "other future income" to the trustee.  11 U.S.C. § 1322(a)(1); *cf. In re Martin*, 464 B.R. 798, 806 (Bankr. C.D. Ill. 2012) ("Debtors who wish to pay their creditors as little as possible or who wish to avoid working for the benefit of their creditors for a plan period of three to five years, should not choose chapter 13 and instead seek relief under chapter 7.").

At day's end, the court sits in equity when reviewing a bankruptcy appeal. *See In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir. 1993).  And equity does not countenance a result that allows Ms. Russell to gain the benefits of a Chapter 13 bankruptcy without shouldering its attendant burdens.  *Cf. In re Norris*, 165 B.R. 515, 518 (Bankr. M.D. Fla. 1994) ("Debtors are receiving the benefit of extending their plan payments.  They cannot receive this grant, which allows them to pay off their priority and secured debts, without also accepting the burden of committing all of their disposable income to fund their plan.").  The unmistakable lack of balance between benefits and burdens underpins the finding of cause for modification.

A related point is the judicial reluctance to confirm so-called "step-down" plans. *E.g.*, *In re Weaver*, No. Civ.A. 05-3018, 2006 WL 305437, at *3 (E.D. Pa. Feb. 7, 2006); *Norris*, 165 B.R. at 518; *see also Martin*, 464 B.R. at 805.  In a step-down plan, the debtor proposes to pay secured and priority claims for the plan's duration, but to pay unsecured claims (in less than full) for only a portion of the plan. The *Norris* decision typifies the rejection of such plans.  165 B.R. 515.  In that case, the debtors sought confirmation of a five-year plan that would pay secured and priority claims for the full five years while only paying unsecured claims for the first three years—the duration of the statutory commitment period.[10]  *Id.* at 516.  The trustee objected, arguing that the debtors could not hide behind the commitment period to avoid paying all of their disposable income into the plan.  *Id.* at 517.  The bankruptcy court agreed, sustaining the trustee's objection and finding that the debtors could only avoid paying the entirety of their disposable income into the plan by paying off the unsecured claims in full; expiration of the commitment period did not alter this obligation.  *Id.* at 517–18.  As the court explained, Chapter 13 "gives debtors two alternatives: pay 100 percent of the unsecured claims or commit all of their disposable income to fund the plan."  *Id.* at 517.

---

[10] At the time *Norris* was decided, the Bankruptcy Code subjected all debtors to a three-year commitment period regardless of their above- or below-median income status.  However, the bankruptcy court found cause to extend the plan to five years to allow the debtors to pay off a large priority claim by the IRS.  *Norris*, 515 B.R. at 516.

By denying modification, the Bankruptcy Court effectively wrote a step-down plan for Ms. Russell—a result that further illustrates its clear error in finding no cause. Barring modification, Ms. Russell's plan would have her pay all of her pre-settlement disposable income into the plan, but only as much of her post-settlement income as necessary to satisfy the secured claim on her car; the Debtor would continue making the same payments to the Trustee, despite enjoying an increased ability to pay. The only justification for this result would be the expiration of her applicable commitment period—an event that leaves unchanged the classification of the personal-injury settlement as property of the estate, *see Waldron*, 536 F.3d at 1242. To be sure, this is not as egregious an abuse of the Bankruptcy Code as witnessed in *Norris*. But the similarities between the Debtor's plan and the rejected step-down plans further demonstrate cause for extension.

Finally, the court must also note the whiff of gamesmanship that lingers around the timing of the Debtor's pursuit of the personal-injury cause of action. Ms. Russell apparently did not seek redress for her personal injuries until February 5, 2016, when she filed with the Bankruptcy Court an application to employ a professional person. (Doc. # 3-7.) While the delay itself is unremarkable, it raises the court's eyebrows to see that Ms. Russell did not file anything until eighteen days after her 36-month statutory commitment period expired, and that she had negotiated a settlement before her petition to hire counsel was granted. Ms. Russell's complete

21

failure to disclose for over nine months that she was pursuing the personal-injury claim adds further cause for suspicion regarding her candor.

Although the Bankruptcy Court did not address the issue (*see* Doc. # 3-22), the Debtor's "lack of candor" (Doc. # 10 at 22) likely ran afoul of § 521(a)(1)'s disclosure requirement.  As noted above, "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." *Burnes,* 291 F.3d at 1286 (internal citation omitted).  The Eleventh Circuit has condemned this sort of nondisclosure by applying judicial estoppel to bar debtors from pursuing causes of action that were not timely disclosed in bankruptcy.  *E.g.*, *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274–75 (11th Cir. 2010); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1292 (11th Cir. 2003); *Burnes*, 291 F.3d at 1287–88.  While the undersigned does not suggest that Ms. Russell's settlement should be voided, her lack of candor adds weight to the conclusion that cause existed to extend the commitment period.

## V.  CONCLUSION

Although the Bankruptcy Court correctly found the settlement to be property of the bankruptcy estate, and properly required a showing of cause before granting the Trustee's motion to modify the Debtor's plan, it incorrectly found that cause had

not been shown.  Because "the entire evidence" leads the court to "the definite and firm conviction that a mistake has been committed," the Bankruptcy Court's finding of fact was clearly erroneous.  *Conner*, 784 F.3d at 765.  Accordingly, it is ORDERED as follows:

1.    The Bankruptcy Court's Order Denying Trustee's Motion to Modify Plan (Doc. # 3-14) is REVERSED;

2.    The Bankruptcy Court's Order denying the trustee's motion to reconsider (Doc. # 3-23) is REVERSED; and

3.    This action is REMANDED to the Bankruptcy Court for the entry of an order in favor of the Trustee, in accordance with this Memorandum Opinion.

A final judgment will be entered separately.

DONE this 8th day of February, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
